**David SIMMONS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–4972.**

Court of Appeals of Alaska.

July 21, 1995.

Randall S. Cavanaugh, Kirk, Robinson & Cavanaugh, Anchorage, for appellant.

Kenneth M. Rosenstein, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

BRYNER, Chief Judge.

David Simmons was convicted of two counts of misconduct involving weapons in the first degree, AS 11.61.200(a)(1) (felon in possession), following a jury trial before Superior Court Judge James A. Hanson. Judge Hanson sentenced Simmons to a composite term of ten years. Simmons now appeals his conviction on numerous grounds and contends that his sentence is excessive. We affirm Simmons' conviction and sentence but conclude that double jeopardy bars the entry of judgment against Simmons on more than one count.

Simmons, who had previously been convicted of a felony, was charged with unlawfully possessing a .44 magnum pistol in Bethel

on two occasions: once in March or April of 1990 and once in July of the same year. Evidence establishing his ownership and possession of the pistol derived in part from a search of Simmons' Bethel residence in July 1990. The search was conducted pursuant to a warrant; below and on appeal Simmons has contested the validity of the warrant, arguing that it was based on stale and false information.

The search warrant for Simmons' residence was based largely on the July 23, 1990, testimony of M.J., who had been engaged in a romantic relationship with Simmons and had lived with him in his trailer for about four months. M.J. testified that in the second or third week of April, Simmons received a pistol in the mail. Shortly thereafter, M.J. saw him fire the gun at a nearby shooting range. According to M.J., Simmons usually kept the gun "[i]n the back bedroom. That's where he usually keeps it." M.J. reported that, "Last time I see it was in my suitcase." Several days before testifying, M.J. had moved out of Simmons' trailer. She reported to the police that Simmons had assaulted her, and she sought police assistance in obtaining her car keys from him.

 Simmons argues that M.J.'s testimony was stale because it described his possession of a gun almost four months prior to the date of the search warrant hearing. A search warrant must be based on current information that supports a finding that probable cause to search exists presently. *Snyder v. State*, 661 P.2d 638, 646–47 (Alaska App.1983). The freshness of information is determined by a flexible test, however—one that takes into account not just the raw passage of time but the totality of the circumstances of each case. *Id.* at 647. Relevant considerations include the type of crime involved, "the nature of the items sought[,] the extent of the suspect's opportunity for concealment[,] and normal inferences as to where a criminal would be likely to hide incriminating articles." *Morrow v. State*, 704

P.2d 226, 230 (Alaska App.1985) (citing *Snyder*, 661 P.2d at 648) (omitting numbering).

Here, M.J.'s testimony described Simmons' receipt of a handgun in the mail, his subsequent practice with the gun, and his continued possession of it at home. Although M.J. did not specify when she had last seen the gun, she made it clear that she had seen it on at least one occasion after Simmons fired it in mid- to late April. M.J.'s testimony described no circumstances indicating that Simmons no longer possessed the weapon or that he kept it elsewhere; her statement that Simmons "usually keeps" the gun in his back bedroom suggests both continuity and currency.[1]

 In issuing a search warrant, a magistrate has only to determine whether there are reasonable grounds to believe that the items to be searched for are at the premises to be searched, not that they are actually there. *Stuart v. State*, 698 P.2d 1218, 1222 (Alaska App.1985). This court traditionally accords great deference to a magistrate's determination of probable cause and "must resolve doubtful or marginal cases largely by the preference to be accorded warrants." *Morrow*, 704 P.2d at 229. *See also Kvasnikoff v. State*, 804 P.2d 1302, 1306 (Alaska App.1991). Considering the totality of the circumstances, we conclude that the issuing magistrate could properly find M.J.'s observations sufficiently fresh to support probable cause.

 Simmons also maintains that M.J.'s testimony was false and that the warrant must therefore be suppressed under *State v. Malkin*, 722 P.2d 943 (Alaska 1986). Simmons' argument asserts no impropriety on the part of the police but involves alleged fabrication only by M.J., a private citizen. Simmons sets forth no argument or authority to support the conclusion that suppression would be appropriate in such a case, even assuming that a material false statement were proved. The state cites authority to

1. Professor LaFave cautions against reading too much into imprecise time references: "the existence or nonexistence of probable cause should not turn on whether the affidavit's verbs end in 's' or 'ed.'" 2 Wayne R. LaFave, *Search and Seizure* § 3.7(b), at 92–93 (2d ed. 1987) (footnote

omitted). We view M.J.'s use of the present tense "keeps" to be relevant, but not pivotal. *Cf. State v. Davenport*, 510 P.2d 78, 82 n. 8 (Alaska 1973) (noting that courts must interpret search warrant affidavits in a "commonsense and realistic fashion").

the contrary. *See* 1 Wayne R. LaFave, *Search and Seizure* § 1.8(a), at 174–78 (2d ed. 1987). In any event, the superior court rejected Simmons' evidence of fabrication on credibility grounds. This ruling was not clearly erroneous. *See McLaughlin v. State*, 818 P.2d 683, 686 (Alaska App.1991).

Simmons next claims that the trial court erred in allowing E.A., a rebuttal witness for the prosecution, to testify that in September of 1990 Simmons threatened her with a pistol that had been delivered to Simmons, at Simmons' request, by a friend of Simmons, Jose Manuel Herrera. The trial court admitted E.A.'s testimony over Simmons' objection that it was inadmissible under Alaska Rule of Evidence 404(b) and 403. On appeal, Simmons renews his claim that the testimony had no legitimate nonpropensity value and was in any event more prejudicial than probative.

Simmons' defense at trial, however, was that he had possessed the disputed handgun only fleetingly—long enough to dispose of it by selling it to Herrera after Simmons received it in the mail. In support of this defense, Herrera testified that Simmons had sold him the gun in May of 1990; Herrera denied ever giving the gun back to Simmons. The state offered E.A.'s testimony to refute Herrera's testimony and to show that even if Simmons had in fact transferred physical possession of the gun to Herrera at some time, Simmons had never relinquished constructive possession of the gun, since it had always been at his beck and call. The trial court admitted the evidence but cautioned the jury that "you are not trying Mr. Simmons here today for any incidents that may have occurred, as to his guilt or innocence of any incidents that may have occurred in September of last year."

2. Simmons additionally argues that the trial court erred in allowing Herrera to be cross-examined about a pending criminal charge and in allowing witness Dalton Moss to testify that, toward the end of the summer of 1990, Simmons had given Moss a holster and some loose rounds of .44 caliber ammunition and had requested Moss to hold it for him. Simmons failed to object to this evidence below. We find no plain error. *See, e.g., Post v. State*, 580 P.2d 304, 308 (Alaska 1978).

▆▆ Our review of the record convinces us that the trial court did not abuse its discretion in finding this evidence relevant to rebut Simmons' defense or in finding its probative value to outweigh its potential for prejudice. *See, e.g., Adkinson v. State*, 611 P.2d 528, 532 (Alaska 1980); *McKee v. State*, 488 P.2d 1039, 1040–41 (Alaska 1971).[2]

Simmons separately claims that the trial court deprived him of the opportunity to raise the affirmative defense set out in AS 11.61.200(b)(3):

> (b) It is an affirmative defense to a prosecution under (a)(1) or (2) of this section that
>
> . . . .
>
> (3) a period of five years or more has elapsed between the date of the person's unconditional discharge on the prior offense and the date of the possession, sale, or transfer of the firearm.

A review of the record, however, establishes that the court never deprived Simmons of the opportunity to raise this affirmative defense. Simmons simply did not attempt to raise it.[3] Moreover, the theory Simmons advances in support of his defense appears to have no legal merit. We find no error.

Simmons next contends that the constitutional provisions against double jeopardy[4] were violated by his convictions of two counts of misconduct involving weapons in the first degree. He asserts that because his possession of the .44 magnum handgun was continuous and his intent the same throughout, he could only be convicted and sentenced for a single count of misconduct involving weapons.

▆▆ Simmons' argument appears to have merit. Simmons was charged with possess-

3. In contending that the arrest and search warrants in his case had been issued without probable cause, Simmons obliquely asserted that he had been unconditionally discharged on his prior offenses more than five years previously. The record provides no indication that Simmons attempted to pursue this issue as an affirmative defense at trial.

4. U.S. Const. amend. V; Alaska Const. art. 1, § 9.

ing the same handgun on two occasions during a three- to four-month period. It appears to be a well-settled proposition in felon-in-possession cases that the element of possession implies continuity: "Possession is a course of conduct, not an act; by prohibiting possession Congress intended to punish as one offense all of the acts of dominion which demonstrate a continuing possessory interest in a firearm." *United States v. Jones,* 533 F.2d 1387, 1391 (6th Cir.1976). *See also State v. Williams,* 211 Neb. 650, 319 N.W.2d 748, 752 (1982).

■ It is also well settled that a continuing course of conduct statutorily defined as a single crime cannot properly be charged as multiple crimes occurring at discreet moments in time. "The Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or spatial units." *Brown v. Ohio,* 432 U.S. 161, 169, 97 S.Ct. 2221, 2227, 53 L.Ed.2d 187 (1977). *Cf. Dawson v. State,* 894 P.2d 672, 679 (Alaska App. 1995).

■ For this reason, courts have held that, when a defendant is charged with multiple counts alleging possession of the same weapon on different occasions, the state must bear the burden of proving that the defendant's possession was not continuous.[5] This burden must be met by proof beyond a reasonable doubt.[6]

■ The state nevertheless argues that Simmons' double jeopardy argument should

be rejected because, in the present case, evidence was presented at trial indicating that Simmons' possession of the .44 magnum pistol on the two occasions charged—in April and in July of 1990—was interrupted by Simmons' sale of the weapon to Herrera. The state's argument suffers from two shortcomings. First, the claim of interrupted possession advanced by the state on appeal is at odds with the theory of prosecution it pursued below. Below, Simmons raised his double jeopardy argument in the form of a pretrial motion to dismiss one of the two counts with which he was charged. In response, the state argued that Simmons' motion was premature—that "the proper remedy is merger after a determination of guilt." At trial, even though evidence was presented indicating that the .44 magnum had at times been in Herrera's possession, the state took the position that transfer of actual possession had no effect on Simmons' constructive possession.

At the conclusion of trial, the jury was given instructions covering actual and constructive possession. The instructions told the jury that Simmons could be convicted if it found either form of possession. In arguing the state's case to the jury, the prosecutor specifically maintained that, even though at times Herrera may have had actual possession of the gun, the gun had always remained in Simmons' constructive possession:

> The conduct of Mr. Simmons throughout this time period is consistent with someone who owned, possessed and had dominion and control over a handgun. He had it sent to him in March, it got to him in April, he used it in April. He used it in

---

5. *See, e.g., United States v. Jones,* 533 F.2d at 1391:

> It is true that in the case at bar the Government is claiming that Jones possessed the pistol on three separate occasions, not that continuous possession existed which has been broken down into arbitrary time periods. With equal propriety the Government might have charged Jones with possession on more than 1100 separate days and obtained convictions to imprison Jones for the rest of his life. The fact that the Government merely has proof that he possessed the same weapon on three separate occasions, rather than continuously for a three-year period, should not dictate the result that Jones could receive three times the punishment he would face if continuous possession

for a three-year period were proved. There is no proof that there was any interruption in the possession by Jones of the weapon.

6. *See, e.g., Webb v. State,* 311 Md. 610, 536 A.2d 1161, 1165 (1988):

> [I]t may be that had Webb removed the weapon from his actual or constructive possession, it would be a separate violation when he retrieved it and wore it again on his person. And it may be that if it was shown that the handgun involved in the first incident was a different weapon from that involved in the second incident, there would be two violations. But if any of these circumstances were in fact so, it was incumbent upon the State at trial to prove the circumstance beyond a reasonable doubt.

July. He apparently misplaced it and was looking for it in July, or late June. And then he tried to get rid of it, when he found out that it—he might get in trouble for it. He got rid of it, in the sense that someone else was holding onto it. He got rid of it in the sense that he gave it, or sold it to Mannie Herrera. But it was still available to him, he still had control over it, because all he had to do was pick up the phone, and ask him to bring it over. And use [it] for whatever purposes he wanted to use it. And that happened in September. And that's consistent with Mr. Simmons possessing a gun.[7]

Thus, the theory advocated by the state at trial all but invited the jury to convict Simmons of both charges based on a single, uninterrupted course of illegal possession.

■ Second, and more fundamentally, although the evidence presented at trial might theoretically have supported a finding of interrupted possession, the jury was never required to consider or decide the issue. Because the instructions did not apprise the jury of the need to find that Simmons' possession of the .44 magnum pistol had been interrupted at some point between the first alleged offense and the second, the jury's verdicts left the issue unresolved. At this juncture, "[a]ny ambiguity must be resolved in favor of the accused." *McDonald v. State*, 872 P.2d 627, 660 (Alaska App.1994). *Cf. Dawson*, 894 P.2d at 679. Accordingly, we conclude that Simmons' two convictions must merge.[8]

Simmons further asserts that the trial court erred in denying him a new trial based on alleged juror misconduct. At trial, Dalton Moss was called by the state to testify about the circumstances surrounding his possession of a holster and some live .44 caliber ammunition belonging to Simmons. According to Moss, Simmons had given him a rucksack containing the holster and ammunition toward the end of the summer of 1990 and asked him "to hang onto it." Moss turned

the rucksack over to the police after his wife decided that she did not want live ammunition in the house with children. Moss also testified that he had later talked to Simmons in the jail and "was led to believe that I was supposed to say he gave me this rucksack to sell[.]"

■ After trial, Simmons filed a motion for a new trial, alleging misconduct on the part of juror C.L. In response to Simmons' motion, the superior court conducted a thorough hearing. C.L. acknowledged that, sometime before the parties' final arguments, she had overheard Dalton Moss talking on the telephone. Moss had laughingly said "something to the effect that, he didn't say what he was going to say, instead he said everything [a] different way." During the jury's deliberations, C.L. indicated to the other jurors that she wanted to abstain from voting, saying that "there was a phone call which makes me wonder about [Moss'] testimony." The other jurors told C.L. not to inform them of the substance of that telephone call. C.L. made no further mention of the issue. The jury then resumed its deliberations, with C.L. participating.

Following the sentencing hearing, the superior court entered a written order concluding that, objectively viewed, the information overheard by C.L. had no effect on the jury's verdict. The court thus denied Simmons' motion. Our review of the record convinces us that the trial court did not abuse its discretion in reaching this decision. *See Swain v. State*, 817 P.2d 927, 930, 934 (Alaska App.1991).

■ Simmons lastly challenges his sentence. Our decision that one of Simmons' convictions must be vacated makes it unnecessary to consider Simmons' claim that his composite sentence is excessive. We must nevertheless examine his remaining sentencing arguments. Simmons maintains that the sentencing court erred in refusing to strike

---

7. Later, on rebuttal, the prosecutor argued: "It's our theory, and my contention, that Mr. Simmons received the gun in April. He maintained possession of it all the way up until—at least until September, when he used it to assault [E.A.]."

8. Upon remand, after giving the state the opportunity to elect the count on which it prefers to have judgment entered, the superior court should vacate the remaining conviction.

unverified information from his presentence report. Simmons' cursory discussion of this issue, however, constitutes an abandonment. *See, e.g., Lewis v. State,* 469 P.2d 689, 691–92 n. 2 (Alaska 1970). Moreover, it appears to us that the information in the presentence report is adequately verified. *See generally Evan v. State,* 899 P.2d 926 (Alaska App. 1995).

 Simmons also maintains that the sentencing court erred in rejecting his two proposed mitigating factors: that his conduct in this case was among the least serious in its class and that his past and current offenses have resulted in consistently minor harm. AS 12.55.155(d)(9) & (d)(13). These arguments are meritless; the sentencing court's rejection of the proposed factors was not clearly erroneous. *See Lepley v. State,* 807 P.2d 1095, 1099 (Alaska App.1991); *Shaw v. State,* 677 P.2d 259, 260 (Alaska App.1984).

 Simmons lastly contends that the imposition of maximum sentences was unwarranted in his case. Upon conviction, Simmons was subject to the presumptive term of three years specified for third and subsequent felony offenders convicted of class C felonies. AS 12.55.125(e)(2). The state proved two aggravating factors: that Simmons' prior criminal history included repeated instances of assaultive behavior and that Simmons had three or more prior felony convictions. AS 12.55.155(c)(8) & (c)(15). Based on Simmons' extensive criminal history, Judge Hanson characterized Simmons as "clearly one of the most dangerous people I've seen[,]" and found him to be "among the very worst offenders[.]" The sentencing record supports these findings; the findings, in turn, support Judge Hanson's decision to impose a maximum term. *See, e.g., State v. Graybill,* 695 P.2d 725, 731 (Alaska 1985). Having independently reviewed the entire sentencing record, we conclude that the sentence imposed below is not clearly mistaken. *McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The conviction and sentence as to one of the two counts for which Simmons was convicted are AFFIRMED. As to the second count, the conviction must be VACATED. This case is REMANDED to the superior court with directions to amend Simmons' judgment of conviction accordingly.